Donald Peder Johnsen (011545)
dpj@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Jeffrey A. Olson (MN 230832)
jao@biz-lit.com
JEFFREY A. OLSON, P.L.L.C.
7831 Glenroy Road, Suite 185
Edina, Minnesota 55439
(952) 835-4709

Attorneys for defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rudolph Chavez, | ) No. 2:09-CV-02521-LOA |
| | ) |
| Plaintiff, | ) **DEFENDANT'S RESPONSE TO** |
| | ) **PLAINTIFF'S MOTION TO DISMISS** |
| v. | ) |
| | ) |
| Northland Group, Inc., | ) |
| | ) |
| Defendant. | ) |
| | ) |

       Plaintiffs' counsel, Krohn and Moss ("K&M"), requests voluntary dismissal of this case. K&M seeks dismissal with prejudice, but wants the parties to bear their own costs and fees. Northland does not oppose dismissal, but asks that dismissal be <u>conditioned</u> upon payment of the fees and costs that it was forced to incur to defend this baseless, boilerplate claim, and upon other relief.

       As discussed in more detail below, Northland did not have an account in Mr. Chavez's name. The suit arises from one 24-second telephone call in which

Northland was attempting to contact a different individual; after Mr. Chavez advised Northland that it had the wrong number, Northland never called him again. Plaintiffs nevertheless commenced this action (one of approximately 15 FDCPA actions they have filed with K&M in this District) asserting boilerplate allegations, and served extensive (70+) boilerplate discovery to which Northland was required to respond. When Northland set Mr. Chavez's deposition, however, he and K&M tried to walk away. The unfounded boilerplate allegations in the Complaint as well as the unjustified scope of Plaintiffs' 70+ boilerplate discovery requests warrant conditioning dismissal upon an award of fees and costs, as well as requiring increased pre-suit case review and certification of such a good faith inquiry in the future.

I.   FACTUAL AND PROCEDURAL BACKGROUND.

   A.   The Parties And Counsel.

      **Plaintiffs**. Plaintiffs are residents of Maricopa County and are serial litigants. Mr. and Mrs. Chavez have filed several FDCPA-based lawsuits since connecting with attorney Ryan Lee at K&M in late 2009. See Affidavit of Jeffrey A. Olson (October 12, 2010) (Exhibit 1 attached hereto) ("Olson Aff.") ¶ 4; Olson Aff. Exhibit A. Mr. Lee has filed at least 15 lawsuits on behalf of Plaintiffs in the District of Arizona. Most have apparently been settled, being voluntarily dismissed shortly after being filed. Id. Plaintiffs' involvement in repeated FDCPA claims with the same counsel may give rise to a "suspicion of barratry and champerty." See Artese v. Academy Collection Serv., Inc., 2000 WL 133733 *4 (D. Conn. 2000).

      **Plaintiffs' Legal Counsel**. K&M engages in significant advertising, particularly on the Internet, and focuses on debtors' rights and debt collectors' methods and practices. See Olson Aff. Exhibit B. K&M asserts that it has handled more than 30,000 consumer actions with over 98 percent of cases being amicably resolved prior to trial. Id. In recent years there has been a proliferation of FDCPA litigation. FDCPA lawsuits reached an all-time high in 2009, and Plaintiffs' counsel was the most active filer (441 suits). See Olson Aff. Exhibit C; Olson Aff. Exhibit D.

1   **Defendant**.  Northland is a collection agency located in suburban
2   Minneapolis, Minnesota.  Northland does not purchase debt, but opts to collect debts
3   placed with Northland for collection purposes by its clients.
4   **Facts Forming Basis Of Lawsuit.**  Upon learning that Mr. Chavez had
5   filed this lawsuit, Northland searched its database of accounts under collection and could
6   not find an account for Mr. Chavez.  Affidavit of Valerie Bartosh (October 12, 2010)
7   (Exhibit 2 attached hereto) ("Bartosh Aff.") ¶ 3.  Based upon the telephone number listed
8   in the Complaint, Northland identified a collection account in the name of a third party.[1]
9   Bartosh Aff. ¶¶ 4-5.  The investigation revealed that on or about October 12, 2009, one of
10  Northland's clients forwarded an account in the name of this John Doe to Northland for
11  collection purposes.  Id.  Northland attempted to contact John Doe, and made four
12  unsuccessful attempts by telephone at the number listed in the Complaint.  On
13  November 10, 2009, a man, presumably Mr. Chavez, answered Northland's fifth attempt
14  and had the following 24-second exchange with Northland's representative:

> NL (Northland):  Hello
>
> RC (Mr. Chavez):  Hello
>
> NL:   Hi.  I'm trying to reach S****
>
> RC:  C***???
>
> NL:  S******
>
> RC:  Oh….No, ma'am he hasn't lived here in five years.
>
> NL: Oh, I see.  Do you happen to any better way to get a hold of him.
>
> RC: No I sure don't.  Uh, last I heard he moved to Texas.
>
> NL: Oh, ok.  Well, I'll update my records then.  Thank you so much.

---

[1]   Due to Northland's sensitivity to confidentiality of debtor information, for purposes of this motion Northland will identify this debtor simply as "John Doe."

        RC:  You bet.

        NL:  Bye bye.

Bartosh Aff. ¶ 7; Bartosh Aff. Exhibit A.  Northland marked the telephone number as "bad" and made no subsequent calls to the Number.  Bartosh Aff. ¶ 7.

    **B.**    **Procedural History**

        Mr. Chavez and K&M filed his Complaint on December 3, 2009.  The lawsuit was the ninth such suit that he filed in the District of Arizona during 2009.  Among other things, Mr. Chavez alleged that Northland had "unlawfully and abusively" attempted to "collect a debt allegedly owed by Plaintiff."  Complaint ¶ 2; see also id. ¶ 8.  Specifically, Mr. Chavez alleged that Northland violated the FDCPA by:

        1) causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse and harass him;

        2) placing calls without meaningful disclosure of the caller's identity;

        3) using deceptive means by failing to disclose in subsequent communications that the communications were from a debt collector; and

        4) failing to disclose in subsequent communications that the communication was from a debt collector.

Complaint ¶ 18.  Mr. Chavez sought statutory and actual damages as well as litigation costs and attorneys fees.

        Having seen Mr. Chavez's Complaint on PACER, Northland's counsel emailed Mr. Lee on December 11, 2009, seeking additional information, a settlement demand, and to offer acceptance of service so as to avoid that added litigation expense.  See Olson Aff. Exhibit D.  Having received no response, Northland's attorney sent another email on December 15 to follow up with Mr. Lee.  See Olson Aff. Exhibit E.  Mr. Lee never responded to either email.  Olson Aff. ¶¶ 7-8.

1    Instead, Northland was served with the Summons and Complaint in this
2  matter on December 22, 2009, and again on February 12, 2010.  See Bartosh Aff. ¶ 9.
3  Northland conducted a search of its database and could not find a relevant account for
4  Mr. Chavez.  Id. ¶ 3.  Accordingly, Northland filed an Answer, denying Plaintiff's
5  allegations, including Chavez's allegation that Northland was attempting to collect a debt
6  owed by Plaintiff.  See, e.g., Answer ¶¶ 11-16.
7    Thereafter, Plaintiff served 70+ Interrogatories, Requests for Admissions
8  and Requests for Documents on March 2, 2010.  See Olson Aff. Exhibits F, G, and H.
9  Most, if not all, of the discovery requests were boilerplate and repeatedly referred to
10 "Plaintiff's alleged debt"-----defining "the debt" as "the disputed debt owed by Plaintiff
11 as identified in the Complaint."  See Olson Aff. Exhibit F (definitions, 2, 5, 7, 11, 12, 13),
12 Olson Aff. Exhibit G (1, 3, 8, 9, 11, 12, 14) and Olson Aff. Exhibit H (3, 4, 23, 31, 32).
13 The discovery requests were also clearly boilerplate---many having no relation to even
14 the fictitious "factual" underpinnings of Chavez's lawsuit.  Perhaps most telling were
15 Plaintiffs' Requests for Admissions, some of which are set forth by example:

> 4.   Admit Plaintiff owes the debt Defendant is attempting to collect.
>
> 9.   Admit Defendant called Plaintiff at Plaintiff's work.
>
> 11.  Admit Defendant called Plaintiff more than three times in 24 hours.
>
> 12.  Admit Defendant called Plaintiff more than five times in 24 hours.
>
> 13.  Admit Defendant called Plaintiff more than seven times in 24 hours.
>
> 14.  Admit Defendant called Plaintiff more than 10 times in 24 hours.
>
> 23.  Admit Defendant communicated with third parties in connection with attempting to collect a debt from Plaintiff.
>
> 24.  Admit Defendant communicated with third parties more than one time in connection with acquiring Plaintiff's located (sic) information.

>   25.   Admit Defendant communicated with Plaintiff at Plaintiff's place of employment.
>
>   26.   Admit Defendant communicated with Plaintiff's family member(s).
>
>   27.   Admit Defendant threaten (sic) to file a lawsuit against Plaintiff.
>
>   28.   Admit Defendant threaten (sic) to put a lien on Plaintiff's property.
>
>   29.   Admit Defendant threatened to garnish Plaintiff's wages.

Olson Aff. Exhibit H.  Clearly, there wasn't even an attempt to revise the boilerplate requests to the facts of this case….or for that matter, even the baseless allegations made in Plaintiff's Complaint.

**Initial Court Conference**. The parties' initial conference with the Court was held on March 3, 2010.  At the conference, counsel for Northland noted that Plaintiff's claim lacked merit and that Northland intended to file a dispositive motion. Affidavit of Donald Peder Johnsen (October 12, 2010) (Exhibit 3 attached hereto) ("Johnsen Aff.") ¶ 3.

Plaintiff's Rule 26(a) Disclosure, dated March 15, 2010, was non-descript, lacked any useful information, and was boilerplate.  The Disclosure referred to exhibits attached to the Complaint, Olson Aff. Exhibit L, and to a "damages form" that was attached to the Complaint.  Id.  However, no such exhibits or form existed.  Olson Aff. Exhibit L.

**Settlement Demand**.  On March 15, 2010, Plaintiff's counsel made a settlement demand, demanding $4,000.00, closure of Plaintiff's debt account (though no such account ever existed), cessation of all collection activities, and deletion of all negative trade lines on credit bureaus.  Johnsen Aff. ¶ 4.

**Plaintiff's Deposition**.  On March 17, 2010, Northland noticed Mr. Chavez's deposition for April 1, 2010.  Nine days later, and having heard nothing from Plaintiff, Northland counsel purchased an airline ticket at a cost of $495.40 to travel to Arizona to take Mr. Chavez's deposition.  Late in the day on March 26, just three

1  business days before the deposition was to take place, Plaintiff's counsel advised
2  Northland, without explanation, that Plaintiff was not able to appear for his deposition.
3  K&M also stated that they were withdrawing from the case. Johnsen Aff. ¶ 5. Northland
4  local counsel advised K&M that counsel for Northland had already purchased an airline
5  ticket. Even so, K&M suggested that Plaintiff could not make himself available until
6  May 17, a month and a half later. Johnsen Aff. ¶ 5. Plaintiff's deposition was not taken.

**Motion to Withdraw**. Shortly after Plaintiff's deposition had been noticed, Plaintiffs' counsel submitted a motion to withdraw from the case on May 29. Olson Aff. Exhibit J. K&M sought permission to withdraw due to "irreconcilable differences" that made it "**impossible for Counsel to effectively represent Plaintiff in this action**." Id. The request was denied, without prejudice, due to K&M's failure to comply with Local Rules. Olson Aff. Exhibit K.

**Northland Discovery Responses**. On April 2, Northland served its discovery responses on Plaintiff and reiterated that it could not find a debt/account belonging to Plaintiff relevant to the lawsuit. On April 20, Plaintiff's counsel was provided with redacted copies of documents relating to John Doe's account.

**Request for Dismissal**. Thereafter, K&M sought Northland's stipulation to dismiss this case---with each party to bear its own costs and fees. Johnsen Aff. ¶ 6. Northland declined, but in a very generous offer to resolve this matter amicably offered to stipulate to said dismissal upon payment of $2,500.00 of Northland's fees and costs. Id. Plaintiff's response was to file the current motion. Id.

**C.     Baseless Nature Of Plaintiff's Claims.**

Plaintiff's first claim is based upon Section 1692d(5) of the FDCPA, which prohibits collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Although the FDCPA does not define "repeatedly or continuously," the FTC has opined that "continuously" means "making a series of telephone calls, one right after the other" and has said that

1   "repeatedly" means "calling with excessive frequency under the circumstances." See
2   Statements of General Policy or Interpretation Staff Commentary On the Fair Debt
3   Collection Practices Act, 53 Fed. Reg. 50,097, 50,105 (Fed. Trade Comm'n Dec. 13,
4   1988). In addition to showing repeated and continuous calls, Plaintiff must demonstrate
5   that Northland intended to annoy, abuse or harass him in order to prevail. See, e.g., Clark
6   v. Capital Credit & Collection Servs, Inc., 460 F. 3d 1162, 1176, n.11 (9th Cir. 2006)
7   (identifying sections 1692d(5), 1692f(3) and 1692c(a)(1) of the FDCPA as exceptions to
8   strict liability). When considering whether a collector has violated section 1692d(5),
9   courts generally consider both the volume and the pattern of the calls. See Katz v.
10  Capital One, 2010 WL 1039850, *3 (E.D. Va. March 18, 2010); Saltzman v. I.C. Sys.,
11  Inc., 2009 WL 2190359, *7 (E.D. Mich. Sept. 30, 2009). As the evidence suggests, there
12  were no repeated or continuous telephone calls. By the content of the only completed
13  telephone call, it is readily apparent that there was no intent to annoy, abuse, or harass
14  Mr. Chavez; the Company simply tried to contact John Doe.
15          As to Plaintiffs' second claim, although a collector must generally disclose
16  his/her identity as a debt collector, that is not so when communicating with third parties.
17  See, e.g., Drossin v. National Action Financial Services, Inc., 641 F. Supp. 2d 1314
18  (S.D. Fla. 2009). A collector may not disclose, to a third party, that a debtor owes a debt.
19  See 15 U.S.C. 1692c(b). But the facts show that Northland did not make any such
20  improper disclosure.
21          As to Plaintiffs' final claims, there are simply no false representations or
22  deceptive means alleged to give rise to a colorable claim in that regard. Again, the case
23  arises from one 24-second polite telephone call, apparently to John Doe's former
24  telephone number or place of residence.
25          Plaintiff was simply not a FDCPA "consumer" since there was no debt
26  owed by Plaintiff. 15 U.S.C. 1692a(3). There were no threats of garnishment, no threats
27  of lawsuits, no threat to put a lien on Plaintiffs' property, no repeated or continuous calls,
28  and certainly no unlawful or abusive conduct by Northland—even though all were made

part of this lawsuit by Plaintiffs and their counsel: there was just one 24-second call that was handled rather politely.

## II. LEGAL DISCUSSION.

Under rule 41(a)(2), the Court may dismiss the action at the plaintiff's request "on terms that the court considers proper." In <u>United States v. Berg</u>, 190 F.R.D. 539 (E.D. Cal. 1999), the Court set forth relevant factors for consideration in establishing conditions for dismissal, including the defendant's effort and expense in preparing for trial, any excessive delay or lack of diligence on the part of the plaintiff in prosecuting the action, insufficiencies in the plaintiff's explanation of the need for a dismissal, and the fact that a summary judgment motion has been filed by the defendant.

The Ninth Circuit has noted that while payment of the defendant's costs and attorneys' fees is not a <u>prerequisite</u> to voluntary dismissal under rule 41(a)(2), the imposition of costs and fees "is usually considered necessary for the protection of the defendant." <u>Stevedoring Servs. Of Amer.</u>, 889 F.2d 919, 921 (9th Cir. 1989) (citing 9 C. Wright & A. Miller, <u>Federal Practice & Procedure</u> § 2366 (1971). "Usually the district judge at least should require that the plaintiff pay the costs of the litigation and that practice has become commonplace." 9 C. Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 2366 (also noting that costs are not limited to "taxable costs" but may include "all expense to which defendant has been put."). Further, a district court may "require the plaintiff to pay the defendant's attorney's fees as well as other litigation costs and disbursements." <u>Id</u>.

A rule 41 dismissal may be conditioned upon the payment of fees if there is a separate basis for the award of fees. <u>Heckethorn v. Sunan Corp.</u>, 992 F.2d 240, 242 (9th Cir. 1993). In this case, several independent bases provide the Court with the authority to impose fees and costs upon Plaintiffs and/or their counsel.

### A. FDCPA Fee Provision.

Under the FDCPA, the Court may award attorneys' fees to a defendant when the action was "brought in bad faith and for the purpose of harassment." 15 U.S.C.

1  §1692k(a)(3).  Black's Law Dictionary defines bad faith, in part, as the "not prompted by
2  an honest mistake as to one's rights or duties, but by some interested or sinister motive."
3  Harassment, as defined, in part, by the Merriam-Webster Dictionary, includes "creating
4  an unpleasant or hostile situation."  Obviously, falsely accusing Northland of deceptive
5  and abusive practices and forcing Northland to participate in and incur expense
6  associated with a baseless federal lawsuit, created an unpleasant and hostile situation for
7  Northland.

8  **B.   28 U.S.C. § 1927**

9  Under 28 U.S.C. § 1927, any attorney who "multiplies the proceedings in
10  any case unreasonably and vexatiously may be required by the court to satisfy personally
11  the excess costs, expenses, and attorneys' fees reasonably incurred because of such
12  conduct."  If a lawyer pursues a path that a reasonably careful attorney would have
13  known, <u>after appropriate inquiry</u>, to be unsound, the conduct is objectively unreasonable
14  and vexatious.  <u>Riddle & Associates, P.C. v. Kelly</u>, 414 F.3d 832, 835 (7th Cir. 2005)
15  (emphasis supplied).

16  **C.   Fed. R. Civ. P. 11.**

17  Third, Fed. R. Civ. P. 11 provides for sanctions against any person who
18  signs a "pleading, written motion, [or] other paper" brought for an improper purpose or
19  that is frivolous, i.e., is not well grounded in fact, warranted by existing law, or made in
20  good faith.  <u>See</u> <u>Christian v. Mattel, Inc</u>. 286 F.3d 1118, 1127 (9th Cir. 2002).  Rule 11
21  requires that sanctions be assessed when a complaint if frivolous, legally unreasonable, or
22  without factual foundation.  <u>See</u> <u>Rachel v. Banana Republic, Inc.</u>, 831 F.2d 1503, 1508
23  (9th Cir. 1987) (rule 11 intended to be applied "vigorously" to curb the abuse of filing
24  frivolous pleadings); <u>see also</u> <u>Terran v. Kaplan</u>, 109 F.3d 1428 (9th Cir. 1997) (FDCPA
25  claims made without adequate investigation, necessitating defendant's defense of an
26  invalid claim).  Further, in <u>Guidry v. Clare</u>, 442 F. Supp. 2d 282 (E.D. Va. 2006), the
27  Court noted counsel's obligation to conduct a reasonable investigation of the factual
28  bases underlying claims in the complaint and determined that an "improper purpose" can

1   be ascertained from the lack of a factual or legal basis for the lawsuit. <u>Id</u>. at 289.
2   Circumstantial facts surrounding the filing may be considered as evidence of a signer's
3   purpose, including repeated filings, outrageous nature of the claims made, or a signer's
4   experience in a particular area of law as appropriate indicators of improper purpose. <u>Id</u>.
5   (finding that "it is pellucidly clear that five and one half of plaintiff's seven FDCPA
6   claims are meritless, indeed flatly frivolous" and awarded sanctions).

7         By prohibiting frivolous and legally unreasonable filings, Rule 11 "imposes
8   upon counsel an affirmative duty of investigation both as to law and fact before filing."
9   <u>Kuschner v. Nationwide Credit, Inc.</u>, 2009 WL 1531574 (E.D. Cal. 2009) (citing <u>Rachel
10  v. Banana Republic, Inc.</u>, 831 F.2d 1503, 1508 (9th Cir. 1987)); <u>see also</u> <u>Kuschner v.
11  Nationwide Credit, Inc.</u>, 2009 WL 2956925 (E.D. Cal. 2009) (unreasonable and frivolous
12  position warranted sanctions).

13        In addition to monetary sanctions, the Court may impose pre-filing review
14  requirements and enjoin litigants from filing further papers without permission. <u>See e.g.</u>,
15  <u>Jones v. Ravitz</u>, 2007 WL 2004755 (E.D. Mich. 2007) (finding that a purpose of Rule 11
16  is to deter baseless filings and compensate those defending against them). The Court in
17  <u>Jones</u> noted that "anyone" who signs a paper or pleading must make a reasonable inquiry
18  to determine whether the paper was presented for a proper purpose … and that the
19  allegations and factual contentions have or are likely to have evidentiary support. <u>Id</u>.

20      **D.**    **The Court's Inherent Authority.**

21        Finally, federal courts have inherent power to assess attorney's fees in
22  response to abusive litigation practices. <u>See, e.g.</u>, <u>Roadway Express, Inc. v. Piper</u>, 447
23  U.S. 752, 765 (1980). "The imposition of sanctions using inherent powers must be
24  accompanied by a specific finding of bad faith." <u>Godlwin v. Bartholow</u>, 166 F.3d 710,
25  723 (5th Cir. 1999). Bad faith conduct includes conduct that is motivated by improper
26  purposes such as harassment or delay. <u>Coghlan v. Starkey</u>, 852 F.2d 806, 814 (5th Cir.
27  1988). The hallmark of a bad-faith lawsuit, however, is one "where the suit is so
28  completely without hope of succeeding that the court can infer that the plaintiff brought

-11-

the suit to harass ... rather than to obtain a favorable judgment." Glick v. Koenig, 766 F.2d 265, 270 (7th Cir. 1985).

### E. Krohn & Moss.

This is not K&M's first encounter with boilerplate claims, boilerplate discovery, and inadequate investigation of the factual underpinnings of a claim. See, e.g., Moline v. Experian Info. Solutions, 2004 WL 2806333 (N.D. Ill. 2004) (proceeding with claims that lacked merit); Mayle v. Equifax Info. Servs., Inc., 2006 WL 398076 (N.D. Ill. 2006) (plaintiff and her counsel "brought the sanctions upon themselves by failing to properly investigate her claim before filing suit"); Lewis v. Trans Union LLC, 2006 WL 2861059 (N.D. Ill. 2006) (against Plaintiff for baseless claim); Tucker v. The CBE Group, Inc., ___ F. Supp. 2d ___, 2010 WL 1849034 * 4-5 (M.D. Fla. 2010) ("the Court finds that Plaintiff and his attorney multiplied the proceedings in this case unreasonably and vexatiously and exhibited a deliberate indifference to obvious facts"); Rhinehart v. The CBE Group, Inc., ___ F. Supp. 2d ___, 2010 WL 2158282 *2 (M.D. Fla. 2010) ("As in Tucker, it appears that Plaintiff's attorney simply produced a boilerplate complaint and Plaintiff verified a complaint which contained spurious claims and erroneous assertions of fact.").

In Tucker, for example, the Court noted that K&M's "boilerplate allegations and requests for relief that could not possibly apply to the instant case." 2010 WL 1849034 *4. The plaintiff had filed more than 15 nearly identical lawsuits in 2009 alone. Id. at n.1. The Court was troubled by the plaintiff's counsel filing a complaint "wherein a majority of the allegations had no basis in fact and then failed to dismiss any of these allegations, or requests for relief, until a summary judgment motion was filed." Id. *5. The plaintiff and K&M were admonished by the Court.

In Rhinehart, similarly, the Court awarded sanctions under 15 U.S.C. 1692k(a)(3) and 28 U.S.C. § 1927, finding the "majority of the Complaint's claims utterly unsupported" and noting that the "boilerplate" Verified Complaint contained "spurious claims and erroneous assertions of fact." 2010 WL 2158282 *2. The Court

went on: "Plaintiff's counsel is admonished that [the Court] expects that allegations in future complaints will be properly vetted prior to the complaint's filing." Id.

### III. ANALYSIS OF FACTORS RELEVANT TO RULE 41.

Consideration of the factors set forth in Berg suggests that conditions should be imposed upon dismissal; namely, monetary conditions to compensate Northland for the expense that it has incurred in responding to Plaintiffs' baseless claims and non-monetary conditions that require increased, good faith pre-suit investigation of claims by K&M along with certification that such review has been completed.

#### A. The Defendant's Effort And Expense In Preparing For Trial.

This suit was commenced 11 months ago in December 2009. Northland retained counsel and local counsel, investigated Plaintiffs' claim, prepared and filed an Answer, participated in the initial conference, prepared and served initial rule 26 disclosures, attended the initial conference with the Court, responded to far-reaching discovery requests, and otherwise proceeded to defend this lawsuit.

Not including the time spent responding to the current motion, Northland has incurred legal fees of $15,088.75. Olson Aff. Exhibit M at 2 ($8,676.25); Johnsen Aff. ¶ 8 ($6,412.50). This does not consider the time and expense incurred by Northland internally, for management and staff to investigate the claim, interact with counsel, and monitor the litigation.

#### B. Any Excessive Delay Or Lack Of Diligence On The Part Of Plaintiff In Prosecuting The Action.

Plaintiffs were not diligent in litigating or seeking dismissal of this action. Approximately 11 months have passed since Plaintiffs commenced this baseless action. Having noticed the lack of diligence, the Court issued an Order on August 26, 2010 (Court Document No. 35) compelling K&M to file a Joint Status Report explaining the nearly five months of inactivity in this case.

More importantly, this case should never have been commenced. From its genesis, the case lacked any legal or factual basis and there was little, if any, diligence

exhibited in investigating the facts and/or merits of Plaintiffs' claims.  Pleadings and disclosures referred to non-existent documents/exhibits.  Discovery requests sought information that was not even remotely close to even the fictional claims set forth in Plaintiffs' Complaint.

Despite all of Plaintiffs' allegations and the far-reaching discovery that were sought by Plaintiffs, there was no debt being collected by Northland in the name of Plaintiff.  There were no calls to Plaintiffs' employers, places of employment, or cell phones.  There were no threats of garnishment, no threats of lawsuits, no threats of liens on Plaintiffs' property, and no repeated and continuous calls.  A simple but genuine pre-suit investigation of the facts in this case could and should have revealed the baseless nature of Plaintiffs' claim (i.e. even identifying which debt Northland called about).  Nonetheless, Plaintiffs and their counsel proceeded with this lawsuit.

Northland engaged Mr. Chavez in a single 24-second polite conversation wherein an outdated number was identified and corrected.  No subsequent calls were made to the number.  Considering Plaintiffs' claim was baseless and not grounded in fact or law at its commencement, Plaintiffs cannot claim diligence in seeking dismissal months after commencing this action and entangling Northland therein.

**C.   Insufficiencies In The Plaintiff's Explanation Of The Need For A Dismissal.**

Here, Plaintiffs are silent as to the "need to dismiss."  No affidavit is submitted by Plaintiffs and no explanation is otherwise offered.

Though no explanation has been offered as to Plaintiffs' "need" to dismiss this matter, K&M may likely attribute the request for dismissal to Mr. Chavez's health[2].  K&M has done so in the past.  See, e.g., Olson Aff. ¶ 17 (referencing White v. Northland

---

[2]   In some of the other lawsuits filed by Mr. Chavez, he has alleged that he is terminally ill, with suicidal ideation.  See, e.g., Exhibits attached to Complaints in the following cases in the District of Arizona:  Chavez, et al. v. National Attorney Collection Services, Inc., File No. 2:2009-cv-01633 (D. Ariz.); Chavez v. Enhanced Recovery Corporation, File No. 2:2009-cv-000843 (D. Ariz.); and Chavez v. Collection Service Bureau, Inc., File No. 2:2009-cv-00808 (D. Ariz.).

Group, Inc., File No. 09-cv-02422 (D. Minn.).  Certainly, it is unfortunate if Mr. Chavez has health issues and Northland is not unsympathetic.  However, Mr. Chavez was sufficiently fit to commence and settle numerous cases in 2009 and 2010 and his illness should not excuse him and his counsel from the obligations attendant to commencing and litigating legal claims before this Court.

Plaintiffs have not offered an explanation of Plaintiffs' need to dismiss this action.  The bottom line is that Plaintiffs sued this case out, along with several other lawsuits, in hopes of obtaining a quick monetary payday.  It may have worked in the other cases, but it did not here, so Plaintiffs and K&M look to escape through their request for dismissal.

**D.     The Fact That A Summary Judgment Motion Has Been Filed By The Defendant.**

Though no summary judgment motion had yet been filed, Northland's counsel clearly stated its intention to seek summary judgment.  The discovery period in this case was set to expire on October 29, 2010, and Northland intended to file its dispositive motion at that time.

**E.     Analysis Of Appropriate Conditions For Dismissal**

**1.     Conditions Are Warranted Under The FDCPA, Section 1927, Rule 11 And The Court's Inherent Authority.**

There is ample authority for this Court to impose monetary and non-monetary conditions upon Plaintiffs and K&M.

Rule 11 imposes an affirmative duty of investigation as to law and fact. Any person who signs a pleading or other paper for an improper purpose or that is not well ground in fact may be held responsible.  Here, it is obvious that such an inquiry was not made.  K&M and Plaintiffs commenced this action without sufficient grounds and proceeded to conduct discovery based on those false allegations---including issues that were totally irrelevant even to Plaintiff's false claims.  Mr. Chavez signed an untrue Verification of the Complaint.  Attorney Lee signed the Complaint, Rule 26 Disclosure,

1 and discovery requests.  All of which were not based upon a reasonable good faith
2 inquiry or well grounded in fact.
3       The FDCPA itself provides for recompense against Plaintiffs for filing their
4 bad faith, harassing claim.  The parties' only interaction was the 24-second telephone call
5 described above.  Plaintiffs' claim, in this regard, had no hope of succeeding.  There were
6 no repeated or continuous calls, no deceptive means employed by Northland and
7 Northland made no improper disclosures.  The Court may infer bad faith from the
8 baseless nature of Plaintiffs' claims.
9       Fees and costs are an appropriate condition pursuant to 28 U.S.C. §1927 as
10 well.  As noted, if an attorney pursues a path that a reasonably careful attorney would
11 have known----<u>after appropriate inquiry</u>----to be unsound, that conduct may be
12 considered unreasonable and vexatious.  Here, there appears to have been little pre-suit
13 investigation.  Further, that apparent inattentiveness spilled over into other aspects of the
14 litigation.  For example, in Plaintiffs' Rule 26 Disclosure, K&M referred to exhibits and
15 "damages forms" that were nonexistent.  Olson Aff. Exhibit L.  K&M also served
16 discovery requests that had no relation even to the fictional allegations set forth in
17 Plaintiffs' complaint.  <u>See, e.g.</u>, Olson Aff. Exhibit H (seeking admissions not related
18 even the "proposed" merits of  Plaintiffs' claim.  <u>Most importantly</u>, K&M's filing of this
19 baseless lawsuit without adequate pre-suit inquiry and service of unwarranted discovery
20 requests unreasonably and vexatiously multiplied this litigation from day one.
21       Finally, the Court is justified in imposing conditions considering the
22 baseless, bad faith nature of Plaintiffs' claims.
23       **2.**     **Future Pre-Suit Review And Discovery Considerations.**
24       As noted above, Rule 41 conditions, at least under Rule 11 and the Court's
25 inherent powers, may include non-monetary conditions.  Considering the apparent lack of
26 pre-suit investigation in this matter and inattentiveness to other matters of record, K&M
27 should be required to conduct heightened pre-suit investigation and to certify that such a
28 good faith investigation has taken place prior to filing future lawsuits.  Further, K&M

should be required to craft discovery requests in future litigation that are tailored to the facts and issues relevant to the litigation so as to avoid needless multiplication of those future proceedings.

### 3. Monetary Conditions.

Northland has incurred attorneys' fees of $15,088.75 in responding to Plaintiffs' baseless allegations. K&M and Plaintiffs should be held jointly and severally responsible for those fees and expenses. All such fees and costs were reasonably and necessarily incurred to respond to Plaintiffs' Complaint and discovery requests as well as otherwise participate in and prepare Northland's defense of this litigation for dismissal by summary judgment or trial.

### CONCLUSION

For all of these reasons, Northland respectfully requests that the Court deny Plaintiffs' motion to dismiss, or impose the conditions for dismissal discussed herein.

RESPECTFULLY SUBMITTED this 12th day of October, 2010.

GALLAGHER & KENNEDY, P.A.

By: /s/ Donald Peder Johnsen

Attorneys for defendant

I certify that on this 12th day of October, 2010, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ryan Lee (024846)
Attorney for plaintiff

/s/ Donald Peder Johnsen
2565970